**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-201 (WHW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOSE FELIX GALLEGOS, Individually and | : | |
| d/b/a LA ESPERANZA RESTAURANT, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff J & J Sports Productions, Inc. ("J&J Sports") moves for entry of default judgment, pursuant to Federal Rule of Civil Procedure 55(b), against Defendants Jose Felix Gallegos and La Esperanza Restaurant. Defendants have not opposed this motion and pursuant to Federal Rule of Civil Procedure 78, this motion is decided without oral argument. For the reasons set forth below, this motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff J & J Sports, a California corporation with its principal place of business in California, "owns the rights for the commercial distribution of the DeLaHoya/Mayweather fight which was held on May 5, 2007." (Pl.'s Aff. ¶ 3 (Dkt. Entry No. 8-1, filed June 17, 2008); Compl. ¶ 3 (Dkt. Entry No. 1, filed Jan. 10, 2008).) Defendant La Esperanza Restaurant is a New Jersey corporation with its only place of business in New Jersey. (Compl. at ¶ 3.) Defendant Jose Felix Gallegos, the owner and operator of La Esperanza Restaurant, also resides

1

NOT FOR PUBLICATION

in New Jersey.  (Id.)  On January 1, 2008, Plaintiff filed suit against Defendants, under 47 U.S.C.

§ 605 or 47 U.S.C. § 553, alleging that Defendants illegally intercepted and exhibited the May 5,

2007 broadcast of the DeLaHoya/Mayweather boxing match to La Esperanza Restaurant patrons.

Plaintiff owns the contractual rights to distribute, via closed circuit television and

encrypted satellite, the DeLaHoya/Mayweather boxing match, which aired on May 5, 2007.

(Compl. at ¶ 12.)  Plaintiff charged residential customers $54.95 to legally view the match.  (Pl.'s

Aff. at ¶ 9B.)  Prior to May 5, 2007, Plaintiff hired Signal Auditing, Inc. to "identify

establishments that unlawfully exhibited [the] program."  (Id. at ¶ 4.)  On May 5, 2007, James

Rahill, an auditor from Signal Auditing, visited La Esperanza bar, observed, and video-taped

"two television sets exhibiting a portion of the event to about [nine] patrons in the

establishment."  (Id. at ¶ 7.)  Neither of the Defendants had purchased the rights to broadcast the

event from Plaintiff.  (Id. at ¶ 6.)

Although Plaintiff admits that it does not know exactly how Defendants obtained access

to the broadcast, "Plaintiff can determine that Defendant[s] did unlawfully exhibit its event

without lawfully purchasing the event; thus Defendants must have pirated the event using one of

[two] methods."  (Pl.'s Mem. 7 (Dkt. Entry No. 8-3, filed June 17, 2008).)  These methods

include either employing a device to unscramble the encoded satellite signal or splicing a coaxial

cable line.  (Id. at 6-7.)  Plaintiff asserts that there is a "likelihood that the event was pirated via

satellite dish as there is a satellite dish evident in the photograph of the premises taken by auditor

James Rahill," but Plaintiff does not support this proposition with additional evidence.  (Id. at 7.)

On February 24, 2008, Defendant Gallegos was served with a copy of the complaint and

2

**NOT FOR PUBLICATION**

summons at his home and Defendant La Esperanza was served with a copy of the complaint and summons at the La Esperanza Restaurant location.  (Clerk's Certificate (Dkt. Entry No. 7, filed April 2, 2008).)  To date, neither Defendant has responded to the complaint.  On April 2, 2008, the Clerk of the Court entered default against Defendants La Esperanza and Jose Gallegos.  (Id.)  On June 17, 2008, Plaintiff filed a motion for default judgment in the amount of $110,629.75 from each Defendant.  (Notice of Motion for Default Judgment (Dkt. Entry No. 8, filed June 17, 2008).)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment. The party against whom default judgment is requested must have been properly served with process. Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Rule 55(a).  See 10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2682, at 13 (3d ed.1998).

A party seeking default judgment is not entitled to such relief as a matter of right, even where the defendant was served with process, and where the default has been noted pursuant to Rule 55(a). See, e.g., Cableco, Inc., 1999 WL 269903, at *1 (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)). The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). Thus, when considering a

3

**NOT FOR PUBLICATION**

motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991), aff'd, 972 F.2d 1331 (3d Cir. 1992) (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2685 (2d ed. 1983)).

Although the Court should accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing Wright, Miller & Kane, supra, § 2688). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, 03-cv-1969, 2006 WL 680533, *1 (D.N.J. March 14, 2006) (citing Wright, Miller & Kane, supra, § 2688). The Court must also "conduct its own inquiry in order to ascertain the amount of damages with reasonable certainty." Internat. Assoc. of Heat & Frost Insulators v. South Jersey Insulation Servs., 05-cv-3143, 2007 WL 276137, *1 (D.N.J. Jan. 26, 2007)(quoting In re Industrial Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

4

NOT FOR PUBLICATION

**DISCUSSION**

      *A.*     *Cause of Action under 47 U.S.C. § 605 or § 553*

In its complaint, Plaintiff seeks relief under 47 U.S.C. § 605 or, alternatively, 47 U.S.C. §

553. (Compl.) Both statutes prohibit the unauthorized interception and exhibition of

communications. The common elements of both statutes require Plaintiff to show that

Defendants intercepted a broadcast, Defendants were not authorized to intercept the broadcast,

and Defendants showed this broadcast to others. 47 U.S.C. §§ 553 & 605. Both statutes also

allow enhanced damages if Plaintiff shows that Defendants willfully intercepted the broadcast for

personal gain. Id. Here, Plaintiff has alleged facts to support the common elements of both

statutes because it alleged that Defendants intercepted the DeLaHoya/Mayweather fight, neither

Defendant paid for the rights to receive or exhibit the transmission, Defendants displayed the

broadcast to patrons of its establishment, they did so willfully, and they did so to increase

revenue for La Esperanza.

The difference between the statutes is that § 605 "encompasses the interception of

satellite transmission," while § 553 applies "once a satellite transmission reaches a cable

system's wire distribution phase." TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d

Cir. 2001). The statutes also differ because § 605 imposes higher statutory damages than § 553.

Plaintiff admits in its motion for default that "it is impossible for the Plaintiff to determine how

the Defendant[s] in this action pirated the DeLaHoya/Mayweather Program without further

discovery . . . because there are multiple illegal methods of pirating Plaintiff's signal that include

pirating the signal through the airwaves, via satellite, or pirating the signal through a cable wire."

5

NOT FOR PUBLICATION

(Pl.'s Mem. at 6.)  Another court in this District has previously dealt with this problem by

"[g]iving Plaintiff the benefit of the doubt" and "not fault[ing] Plaintiff ... for failing to plead the

particular manner of interception since this may be exclusively within Defendants' knowledge."

J&J Sports Prods., Inc. v. Perdomo, No. 06-1374, 2007 U.S. Dist. LEXIS 21137, at *6 (D.N.J.

March 26, 2007).  That court awarded damages "in an authorized amount of statutory damages

for the illegal interception of programs under either [§ 553 or § 605]."  Id. at *12.  Concurring

with this precedent, the Court is satisfied that Plaintiff has pleaded facts that give rise to a cause

of action under either 47 U.S.C. § 553 or 47 U.S.C. § 605 and Plaintiff is entitled to statutory and

enhanced damages consistent with those authorized by both statutes.

      *B.*     *Damages*

     Both § 605 and § 553 allow Plaintiff to elect to receive statutory damages, which are

determined based on statutory guidelines and judicial discretion.  47 U.S.C. §§ 605, 553.  Section

605 provides for basic statutory damages of "not less than $1,000 or more than $10,000" plus

enhanced damages of "not more than $100,000."  47 U.S.C. § 605.  Section 553 allows basic

statutory damages "in a sum of not less than $250 or more than$10,000" and enhanced damages

in an "amount of not more than $50,000."  47 U.S.C. § 553.

     Plaintiff has requested that it be awarded $220,000 ($110,000 from each Defendant), the

maximum statutory and enhanced damages allowed under § 605 "as a deterrent to future

unlawful behavior."  (Pl.'s Mem. at 10, 13 & 14.)  Courts of this District and the Third Circuit

have approved the award of statutory damages in excess of actual damages for the purpose of

deterrence.  See Comcast Cable Comm. v. Bowers, No. 06-1664, 2007 U.S. Dist. LEXIS 38513

NOT FOR PUBLICATION

(D.N.J. May 25, 2007) (awarding the plaintiff $10,000 in statutory damages when actual

damages were much less to "serve as a deterrence"); Schnall v. Amoby Nat'l Bank, 279 F.3d 205

(3d Cir. 2002) (approving of awarding statutory damages in excess of actual damages to serve a

deterrent purpose).  However, courts have also acknowledged that when there is a huge

discrepancy between maximum statutory damages and actual damages, an award of maximum

statutory damages is not appropriate despite its deterrent effect.  See Perdomo, 2007 U.S. Dist.

LEXIS 21137, at *12 (awarding statutory damages in the amount of $1,200 because "this is the

amount [the p]laintiff claims that [the d]efendants would have had to pay to legitimately

purchase the right to commercially exhibit the boxing match"); J&J Sports Prods., Inc. v.

Munguti, No. 06-1282, 2007 U.S. Dist. LEXIS 22096, at *12 (D.N.J. March 26, 2007) (same and

awarding $800 in enhanced damages because the defendant willfully intercepted the broadcast

for commercial gain); Comcast Cable Comm. v. Adubato, 367 F. Supp. 2d 684, 696 (D.N.J.

2005) (noting that when the defendant's piracy only causes the plaintiff minimal actual damages

and the defendant makes minimal profit from the piracy, "it would be unconscionable to allow

any additional relief" so extremely excessive of the actual damages).

        Here, Plaintiff has not provided evidence indicating what it would have charged

Defendant to lawfully receive and exhibit the boxing match.[1]  The Court was able to estimate,

based on the costs of other similar commercial exhibitions discussed by other cases heard in this

---

        [1] The only pricing information provided by Plaintiff was that the cost to individually
purchase the broadcast was $54.95.  (Pl.'s Aff. at ¶ 9.)  Had the nine La Esperanza patrons who
illegally viewed the broadcast each purchased the match at their homes, Plaintiff would have
profited $494.55.  However, the Court finds this information irrelevant to the instant case
because this case is about an illegal commercial broadcast, not broadcasts to private homes.

NOT FOR PUBLICATION

District, that the commercial distribution rights of the boxing match would have cost approximately $1,500.   See Perdomo, 2007 U.S. Dist. LEXIS 21137, at *12 (plaintiff J&J Sports Productions admitting that commercial rights to exhibit a similar 2007 boxing match cost $1,200); Munguti, 2007 U.S. Dist. LEXIS 22096, at * 12 (same).  The Court will award Plaintiff $1,500 in statutory damages, a generous estimate of what its actual damages may have been.

The Court also considers the deterrent purposes of the enhanced damages under both statutes because Plaintiff did allege that Defendant intercepted the broadcast willfully and for personal financial gain.  As the Munguti court reasoned, an award of $800 in enhanced statutory damages is appropriate when the plaintiff provided "no proof that defendant pirated other events, advertised the fight, or charged a cover charge or premium on food when they viewed event to approximately forty customers."  Munguti, 2007 U.S. Dist. LEXIS 22096, at *11 (citing Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02-7972, 2003 U.S. Dist. LEXIS 2374, at *1-2 (S.D.N.Y Feb. 24, 2003).)  Here, Defendants showed the event to only nine customers.  And Plaintiff has provided no evidence of any[2] of the factors listed in the Munguti decision.  The Court is satisfied that the minimal profit made and promotion done by Defendant warrants enhanced statutory damages of $1,000.  As such, the Plaintiff will be awarded enhanced and

---

[2] Plaintiff alleged that Defendants "advertised the event through a poster, as evident in the Video attached."  (Pl.'s Mem. at 12.)  Upon review of the referenced video, the Court notes that this alleged advertisement is nothing more than a hand-drawn sign in a store window.  (Id. at Attached Video.)  Although advertisement is one factor that the Munguti court suggested would warrant increased enhanced damages, this Court finds that the sign indicated in the instant case is not sufficient to warrant such an increase in enhanced damages.

**NOT FOR PUBLICATION**

statutory damages in the total amount of $2,500.[3]

  C.  *Attorney's Fees*

    Section 553 allows and § 605 requires the award of attorney's fees and costs.  Plaintiff

has requested an award of fees and costs in the amount of $1,259.50.  Plaintiff supports this

figure with a detailed affidavit from Plaintiff's attorney breaking down the hours that he worked

and the costs expended.  (Attorney's Aff. of Costs and Fees (Dkt. Entry No. 8-2, filed June 17,

2008).)  The Court is satisfied that these fees are reasonable and awards Plaintiff attorney's fees

and costs, as requested, in the amount of $1,259.50.

---

[3] Plaintiff's papers indicate that it is requesting the maximum statutory and enhanced damages from each Defendant, totaling an award of $220,000.  (Pl.'s Aff. at ¶ 17-18; Pl.'s Mem. at 13-14; Proposed Order (Dkt. Entry No. 8-6, filed June 17, 2008).)  This conclusion is supported by the fact that, in its proposed order, Plaintiff asks for the attorney's fees to be split between Defendants, $629.75 from each Defendant.  (Proposed Order; Attorney's Aff. of Costs and Fees (Dkt. Entry No. 8-2, filed June 17, 2008).)  The Court finds that awarding double damages is excessive given the minimal loss by Plaintiff, the minimal profit turned by Defendant, and because damages attributable to La Esperanza Restaurant and Jose Gallegos will be paid from the same source.  As such, the Court awards damages against both Defendants jointly and severally.

**NOT FOR PUBLICATION**

**CONCLUSION**

For the preceding reasons, Plaintiff's motion for default judgment is granted in the amount of $2,500 in statutory and enhanced damages and $1,259.50 in costs and attorney's fees against the defendants, jointly and severally.


**s/William H. Walls**
United States Senior District Judge


**Appearances**

Wayne D. Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, Box 351
Lonstein Professional Bldg.
Ellenville, New York 12428

Attorney for Plaintiff J & J Sports Productions, Inc.